Larry KALLENBERGER,
Plaintiff-Appellee,

v.

Mary Estill BUCHANAN, Secretary of State, State of Colorado, Defendant-Appellant.

No. 82SA318.

Supreme Court of Colorado,
En Banc.

July 29, 1982.
Rehearing Denied Aug. 16, 1982.

Simons & Iuppa, Barney Iuppa, Colorado Springs, for plaintiff-appellee.

J. D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Kristie A. Hansen, Asst. Atty. Gen., General Legal Services Section, Denver, for defendant-appellant.

PER CURIAM.

The defendant Secretary of State, Mary Estill Buchanan, appeals an order of the El Paso County District Court enjoining her from conducting a vacancy election for state Senate District 12 within the district boundaries in effect prior to the statewide 1982 Reapportionment and directing that the vacancy election be conducted using boundaries created by the court. The district court's decision was based on its determination that section 2-2-504, C.R.S.1973 (1981 Supp.), providing for the filling of a vacancy in the office of a holdover senator during the implementation of the 1982 Reapportionment Plan for the General Assembly, violates the constitutional rights of the plaintiff, Larry Kallenberger, to vote and to seek office. We reverse.

In 1980, Steve Durham was elected state senator from Senate District 12 for a term of office to expire in January 1985. In 1981, Durham resigned his senate seat and Peter Susemihl was appointed to fill the vacancy until the 1982 general election, under section 1-12-103, C.R.S.1973 (1980 Repl. Vol. 1B) which requires that a vacancy filled by appointment be filled by election at the next general election.[1]

Meanwhile, under the statewide 1982 Reapportionment of the General Assembly (Reapportionment) approved by this Court in *In re: Reapportionment of the Colorado General Assembly*, 647 P.2d 191 (Colo.1982) the Reapportionment Commission redrew the boundaries of Senate District 12. The Commission also designated the election date for the new district as November 1984. *See Colo.Const.* Art. V, §§ 3 and 5; section 2-2-503, C.R.S.1973 (1981 Supp.).[2] Because of the vacancy, however, an election was scheduled for 1982 as well as 1984. On May 22, 1982, the plaintiff was certified as the Democratic Party's nominee for the 1982 vacancy election for state senate from Senate District 12.

---

1. Section 1-12-103 provides in pertinent part:
   (1) In the event of a vacancy in the general assembly, such vacancy shall be filled by the appropriate vacancy committee ... of the same political party and of the same representative or senatorial district represented by the former member whose seat is vacant. The vacancy shall be so filled until the next general election after such vacancy occurs, when such vacancy shall be filled by election. *See also Colo.Const.* Art. XII, Sec. 11 which provides:
   ... The term of office of any [public] officer elected to fill a vacancy shall terminate at the expiration of the term during which the vacancy occurred.

2. *Colo.Const.* Art. V, § 3 provides that state senators shall be elected for a term of four years, and § 5 provides that
   [t]he senate shall be divided so that one-half of the senators, as nearly as practicable, may be chosen biennially.

Section 2-2-503 provides:
   As a part of its preliminary and final reapportionment plans for state senatorial districts, the commission shall designate those senatorial districts in which state senators shall be elected at the general election to be held in November, 1982, and every four years thereafter, and those senatorial districts in which state senators shall be elected at the general election to be held in November, 1984, and every four years thereafter. . . .
Because under Reapportionment all district lines are redrawn as of 1982, but under the above provisions half the senators are not elected from the new districts until 1984, half the new districts are represented for two years by senators elected from the old, pre-Reapportionment districts. These Districts are called holdover districts; their incumbents, holdover senators.

Section 2–2–504 governing the conduct of vacancy elections provides that a vacancy in a senate seat must be "filled from the district from which [the former senator] was elected."[3] On May 17, 1982, the Secretary of State issued a memorandum which directed that, as required by section 2–2–504, primary and general elections for a vacancy in a holdover senate district shall be conducted within the geographical boundaries of the 1980 senate districts. As of the date the directive was issued, the only vacancy election in a holdover senate district was the one in Senate District 12. Based upon the May 17 directive, the Secretary of State rejected the plaintiff's candidacy because he was not a resident of the old district.[4]

On June 15, 1982, the plaintiff filed a complaint in the El Paso County District Court seeking injunctive relief to compel the defendant to order that the 1982 election for Senate District 12 be conducted using the new Reapportionment boundaries, which would encompass the plaintiff's residence, and to place his name on the 1982 primary election ballot. The plaintiff also sought for himself and all others similarly situated[5] a declaratory judgment affirming his right to vote in 1982 for a candidate from the new district.

The district court noted that, but for the vacancy created by Senator Durham's resignation, which required that an election be held in 1982, the next election to fill the new District 12 seat would be conducted in 1984 under Reapportionment. The court held that, while representation of a district by a holdover senator not elected by all the voters of the new district is constitutional under *In re: Reapportionment of the Colorado General Assembly, supra,* when a vacancy causes an election to be held in a district which otherwise would have been represented by a holdover senator, the old boundaries should not be used for that election. The court based its holding on the proposition that to deny a citizen who resides in the new district but not in the old one the right to vote or seek office in that election is unconstitutional under the one-person one-vote rule of *Reynolds v. Simms,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).[6] *See Wesberry v. Saunders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

Based on its conclusion that a vacancy election using the old district boundaries would be unconstitutional, the district court fashioned special district boundaries for the election, encompassing all the voters residing in both the old and the new District 12 who would be represented by the senator elected for the period from January 1983 until January 1985, the period during which the senator elected in the vacancy election would hold office.[7] This judicially fashioned district included 97,433 persons.[8]

Because *Colo.Const.* Art. V, § 5 requires that state senators be divided "so that one-

---

**3.** Section 2–2–504 provides in full:

Nothing in this part 5 or in any reapportionment plan shall be construed to cause the removal of any senator from his office for the term for which he was elected, and each such senator shall serve the term for which he was elected. In the event of a vacancy in the senate, such vacancy shall be filled as provided by law. If any senator elected at the 1980 general election shall vacate his seat prior to the expiration of his term of office in January, 1985, *such vacancy shall be filled from the district from which he was elected.* (Emphasis added.)

**4.** *Colo.Const.,* Art. V, Sec. 4 provides that a representative or senator shall have resided

at least twelve months next preceding his election . . . within the territory included in the limits of the . . . district in which he shall be chosen. . . .

The plaintiff, who resides in Woodland Park in Teller County, would qualify for candidacy in the new district.

**5.** Nothing appears in the record to indicate that the plaintiff pursued his class action claim.

**6.** We summarized the holding in *Reynolds v. Simms,* in *In re: Reapportionment of the Colorado General Assembly, supra,* at 198 n. 11.

**7.** The vacancy election district excluded those residents of the old district who, under Reapportionment, would vote as residents of new Senate District 11 in 1982.

**8.** Under Reapportionment, the ideal population for each Colorado senate district is 82,538. Based on the 1980 census, the population of the old district is 60,212, and of the new district, 81,535.

half of the senators, as nearly as practicable, may be chosen biennially," the redrawing of district boundaries every ten years results, for two years after the boundaries have been changed, in half the members of the Senate being "holdover" senators from pre-Reapportionment districts. This anomaly is addressed by deeming that a holdover senator, although elected from the old district, represents the citizens of the new senate district of which he is a resident. *In re: Reapportionment of the Colorado General Assembly, supra.* Here, the plaintiff does not question the constitutional validity of this general scheme for representation by holdover senators. His only contention is that since a vacancy election is required in 1982 anyway, and since the person who is elected senator will be an identifiable representative of the citizens of the new district, it is the voters in the new district who should vote to fill the vacancy. According to the plaintiff, the failure to allow the new district to choose its senator where such an opportunity is available unconstitutionally denies voters of the new district the right to participate in the political process and the right to vote.

In addition to the cases relied upon by the district court, the plaintiff cites *Chapman v. Meier,* 420 U.S. 1, 95 S.Ct. 751, 42 L.Ed.2d 766 (1975); *White v. Register,* 412 U.S. 755, 93 S.Ct. 2342, 37 L.Ed.2d 314 (1973); and *Yates v. Kelly,* 113 N.J.Super. 533, 274 A.2d 589 (1971). All of the cases cited, with the exception of *Yates v. Kelly,* are court reviews of legislative reapportionment and not directly relevant to the issue before us. In *Yates v. Kelly,* the New Jersey court addressed a problem created when a state senator, elected in 1967, resigned in 1970. Meanwhile, in 1969, New Jersey adopted a new reapportionment plan to replace the one declared unconstitutional in 1967 but used for the 1967 elections because of lack of sufficient time to formulate a new plan. The New Jersey court held that the vacancy election should be from the new district because the old district was unconstitutional. The court noted that although the creation or re-creation of senate districts was a legislative function, this type of problem

with a vacancy election had not been envisaged and neither the reapportionment commission nor the legislature had developed a resolution.

The facts before us are distinctly different. The old district, from which Senator Durham was originally elected, has never been declared unconstitutional; it was simply replaced in the reapportionment process mandated by the Colorado Constitution. The statutory provisions implementing this process and our decisions have determined the system of holdover representation now in effect. We held in *In re: Reapportionment of the Colorado General Assembly, supra,* February 19, 1982, that this system is constitutional, stating:

Although reapportionment and election scheduling should preserve wherever possible the opportunity of all citizens to vote for a state senator every four years, the complexities of the reapportionment process may result occasionally in a six-year delay of the opportunity of some persons to vote for a senator. Where the result is absolutely necessary, it does not constitute a constitutional deprivation unless the change is shown to be the result of an invidious discrimination. *See Ferrell v. Hall,* 339 F.Supp. 73 (D.C.Okl.1972) (*aff'd mem.* 406 U.S. 939 [92 S.Ct. 2045, 32 L.Ed.2d 328] (1972)); *Stout v. Bottorff,* 249 F.Supp. 488 (D.C.Ind.1965); *McCall v. Legislative Assembly,* 291 Or. 663, 634 P.2d 223 (1981). *But see Schaefer v. Thomson,* 251 F.Supp. 450 (D.C.Wy. 1965) (*aff'd mem.* 383 U.S. 269 [86 S.Ct. 929, 15 L.Ed.2d 750] (1969)).

We are not persuaded that the constitutionality of holdover representation is altered in any significant way by the occurrence of an intervening vacancy election. Whether or not a vacancy election is held, the complexities of reapportionment may result in a delay of the opportunity of some persons to vote for a senator. However, none of these persons will be without an identifiable senatorial representative between January 1983 and January 1985. *See In re: Reapportionment of the Colorado General Assembly, supra* (February 19, 1982).

The General Assembly provided by statute for the method of filling a vacancy. Section 2–2–504. Such a legislative enactment comes before this Court with a presumption of constitutionality. *R & F Enterprises v. Board of County Commissioners*, 199 Colo. 137, 606 P.2d 64 (1980); *People ex rel. Dunbar v. Gym of America*, 177 Colo. 97, 493 P.2d 660 (1972); *Mosko v. Dunbar*, 135 Colo. 172, 309 P.2d 581 (1957). One of the fundamental tenets of our constitutional system is that courts do not approve or disapprove the wisdom of legislative decisions or the desirability of legislative acts. *Bellendir v. Kezer*, 648 P.2d 645 (Colo.1982); *Frankel v. City and County of Denver*, 147 Colo. 373, 363 P.2d 1063 (1961). *See Colo.Const.*, Art. III. This general doctrine is reinforced in the area of apportionment of electoral districts, which is a matter not to be intruded on by the courts unless constitutional rights are violated. *State ex rel. Lockert v. Crowell*, 631 S.W.2d 702 (Tenn.1982); *Harradine v. Board of Supervisors*, 68 A.D.2d 298, 416 N.Y.S.2d 927 (1979); *State ex rel. Turner v. Scott*, 269 N.W.2d 828 (Iowa 1978).

It is of special significance in the context of this case that a court-created deviation from boundaries carefully fashioned in the 1982 Reapportionment and already approved by this Court has the potential to create needless confusion by casting doubt on the validity for various purposes of district boundaries.[9] Such confusion undermines the reapportionment scheme. In the absence of a showing beyond a reasonable doubt that section 2–2–504 is unconstitutional, *see R & F Enterprises v. Board of County Commissioners, supra*, we find unjustified the district court's disregard of that legislative directive.

Judgment reversed and cause remanded to the district court with directions to dismiss the complaint.

---

**9.** The defendant's brief notes as one possible area of confusion the people's right to recall elected officials guaranteed under Article XXI, section 1 of the Colorado Constitution. This provision states, "Every elective public officer of the State of Colorado may be recalled from office at any time *by the electors entitled to* *vote for a successor of such incumbent....*" (Emphasis added.) *See* section 24–9.5–101, C.R.S.1973 (1981 Supp.). The district court's action creates uncertainty as to who would be eligible to sign a recall petition and vote in a recall election.