Michael S. **DURAN** and **Daniel Trujillo, Plaintiffs-Appellees,**

v.

Richard **LAMM, Governor of the State of Colorado, Allen L. Ault, Executive Director of the Department of Corrections, William Wilson, Superintendent of the Maximum Security Unit of the Colorado State Prison, Roy Romer, Treasurer and James Stroup, Controller, Defendants-Appellants.**

**No. 83CA1206.**

Colorado Court of Appeals, Div. III.

Dec. 20, 1984.

Rehearing Denied Jan. 24, 1985.

Certiorari Denied June 24, 1985.

Kelly, Haglund, Garnsey & Kahn, Edwin S. Kahn, Ann B. Frick, Holme Roberts & Owen, Jeffrey A. Chase, Denver, for plaintiffs-appellees.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. DeMuro, First Asst. Atty. Gen., Denver, for defendants-appellants.

BABCOCK, Judge.

The issue in this civil rights action under 42 U.S.C. § 1983 is whether a state court may join the state controller and the state treasurer as parties defendant after final judgment on the merits to enforce its judgment against the state for attorney fees awarded pursuant to 42 U.S.C. § 1988. The trial court granted plaintiffs' motion to add the state controller and the state treasurer as parties defendant and ordered the state controller to issue a warrant directing the state treasurer to pay the 42 U.S.C. § 1988 judgment for attorney fees, expenses, and costs. We affirm.

After this action was instituted under 42 U.S.C. § 1983, after numerous motions were prepared, briefed, and argued, and, after extensive research, discovery, and negotiations were conducted, the parties entered into, and the trial court ordered approval of, a stipulated settlement in August 1980. In January 1981, the trial court entered judgment for attorney fees, costs, and expenses on application of plaintiffs' counsel pursuant to 42 U.S.C. § 1988. This judgment was affirmed on December 3, 1981, *see Duran v. Lamm*, 644 P.2d 66 (Colo.App.1981), certiorari was denied on April 12, 1982, and mandate was issued on April 15, 1982.

On April 21, 1982, plaintiffs moved to join the state controller and the state treasurer as additional parties defendant to enforce the judgment for attorney fees. At the hearing held May 6, 1982, the trial court denied the motion because the General Assembly was in recess and would reconvene for only one day in May prior to adjournment of the 1982 General Session. Thus, the trial court concluded that it would be unreasonable to expect the General Assembly to pass an appropriations bill in 1982 to satisfy the judgment.

The General Assembly received notice of the judgment in April 1982. A request for payment was made by plaintiffs' counsel to the Joint Budget Committee in July 1982. Unsuccessful attempts were made to secure a sponsor for the appropriate legisla-

tion to satisfy the judgment. Notice of these matters was given to the attorney general. *See* § 24–10–113.5, C.R.S. (1982 Repl.Vol. 10). Nevertheless, the attorney general and the General Assembly took no action to satisfy the judgment during the 1983 General Session. Therefore, in July 1983, plaintiffs renewed their motion for joinder of the state treasurer and the state controller and for enforcement of the judgment, and the trial court granted the requested relief.

Defendants first argue that § 24–10–113, C.R.S. (1982 Repl.Vol. 10) provides the exclusive means for enforcing a judgment against the state. It provides in part that:

"(1) A public entity or designated insurer shall pay any compromise, settlement, or final judgment in the manner provided in this section, and *an action pursuant to the Colorado rules of civil procedure shall be an appropriate remedy to compel a public entity to perform an act required under this section.*

"(2) The state ... shall pay, to the extent funds are available in the fiscal year in which it becomes final, any judgment out of any funds to the credit of the public entity that are available from any or all of the following:

"(a) A self-insurance reserve fund;

"(b) Funds that are unappropriated for any other purpose unless the use of such funds is restricted by law or contract to other purposes;

"(c) Funds that are appropriated for the current fiscal year for the payment of such judgments and not previously encumbered.

"(3) If a public entity is unable to pay a judgment during the fiscal year in which it becomes final because of lack of available funds, the public entity shall levy a tax ... sufficient to discharge such judgment...." (emphasis added)

■ . Defendants contend that because the General Assembly failed to act pursuant to § 24–10–113, C.R.S. (1982 Repl.Vol. 10), the "appropriate remedy" to compel performance under the act is an action in the nature of mandamus pursuant to C.R.

C.P. 106(a)(2). Although that remedy may be appropriate, it is not exclusive in this instance.

■ When Congress passed the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, it intended to exercise its power under the Supremacy Clause to set aside the state's immunity under the Eleventh Amendment. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Congress also intended to authorize collection of attorney fees incurred by prevailing parties in 42 U.S.C. § 1983 actions either directly from the officials in their official capacity (as distinguished from individual liability), from funds of the agency under their control, or from the state. *Hutto v. Finney, supra.* In reliance upon the rule of *Hutto v. Finney, supra,* and pursuant to Fed.R.Civ.P. 70, federal courts have approved both joinder of a state controller and a state treasurer as well as the procedures directing a state controller to issue a warrant ordering a state treasurer to pay attorney fees pursuant to 42 U.S.C. § 1988. *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980); *Spain v. Mountanos,* 690 F.2d 742 (9th Cir.1982).

Defendants contend, however, that the rule in *Gates* and *Spain* does not apply to state court proceedings, and that, in any event, the General Assembly has not manifested its unequivocal refusal to comply with the applicable provisions of the Colorado Governmental Immunity Act. *See* § 24–10–113, C.R.S. (1982 Repl.Vol. 10).

As stated in *Spain v. Mountanos, supra:*

"Ordinarily, the equitable remedies provided under Rule 70 are not appropriate in enforcing a monetary judgment.... However, under the extraordinary circumstances here where the judgment is against a state, which refuses to appropriate funds through the normal process provided by state law, the district court should not necessarily be reduced to satisfying a judgment through the cumbersome procedure of attempting to execute against state property or bank accounts.

It may, instead, pursue any remedy provided in Rule 69 *or* Rule 70 to enforce the award, including ordering state officials to pay the claim." (emphasis added)

And, in *Gates v. Collier, supra,* the court reasoned that:

"[W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance.... 'The issue here is not one of judicial confrontation with the state. It is one of *implementation of a Congressional mandate.'* ... The italicized words provide the key. Congress has declared that states and their officials who violate federal civil rights laws must reimburse the successful plaintiff for costs incurred in seeking redress. To strike down the order in this case because it conflicts with the laws of Mississippi would be no different than reversing a bare judgment for attorney's fees. *In either case, we would be allowing the state by legislative action, to recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove. Such a result would be contrary to the command of the Supremacy Clause of the United States Constitution."* (latter emphasis added)

C.R.C.P. 70 was adopted with minor changes from Fed.R.Civ.P. 70. Construction of the federal counterpart by the federal circuits constitutes persuasive authority. *See Lucas v. District Court,* 140 Colo. 510, 345 P.2d 1064 (1959). Moreover, application of the rule of *Gates* and *Spain* to state court proceedings under 42 U.S.C. § 1988 is consistent with the purpose of that act, which is to ensure effective access to the judicial process, preferably within the state courts, to individuals least able to afford legal representation who find their constitutionally protected rights violated by governmental action. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Int'l Society for Krishna Consciousness, Inc. v. Colorado State Fair,* 673 P.2d 368 (Colo.1983).

In *Mucci v. Falcon School District # 49,* 655 P.2d 422 (Colo.App.1982), we held that conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 cannot be immunized by the Colorado Governmental Immunity Act. Thus, it is questionable whether the judgment enforcement procedure of § 24–10–113, C.R.S. (1982 Repl.Vol. 12) is applicable here. However, even if we assume it to be applicable, the state cannot frustrate the intent of 42 U.S.C. § 1988 by setting up legal barriers to block enforcement of an attorney fee award. Section 24–10–113 and C.R.C.P. 106 are simply alternative means available to plaintiffs to enforce their judgment. *See Spain v. Mountanos, supra.*

Therefore, we hold that a Colorado trial court may invoke its equitable authority under C.R.C.P. 70 to enforce a judgment for attorney fees awarded under 42 U.S.C. § 1988. We further hold that the state need not express unequivocally its unwillingness to comply with the judgment for attorney fees before the trial court may invoke its equitable authority under C.R.C.P. 70. *LaRaza Unida v. Volpe,* 545 F.Supp. 36 (N.D.Calif.1982); *cf. Spain v. Mountanos, supra.* The General Assembly's inaction during the 1983 General Session sufficiently expressed its unwillingness to comply with the valid judgment of the trial court to justify invocation of C.R.C.P. 70. *See Gates v. Collier, supra.*

Defendants further argue that the trial court exceeded its jurisdiction in ordering the state controller to issue a warrant directing the state treasurer to pay the plaintiffs' judgment for their attorney fees. They rely upon Colo. Const. art. V, § 33, which states:

"No monies in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, *or otherwise authorized by law,* and any amount disbursed shall be substantiated by vouchers signed and approved in the manner prescribed by law." (emphasis added)

**614**

Defendants assert that the trial court's order unnecessarily intrudes into the domain of both the executive and legislative branches of government in violation of Colo. Const. art. III, unless it can be shown that the trial court's order was "otherwise authorized by law."

 This identical argument based upon a similar provision of the California Constitution was rejected by the court in *Spain v. Mountanos, supra.* We hold that the trial court's order here is "otherwise authorized by law." 42 U.S.C. § 1988; *Hutto v. Finney, supra; Gates v. Colliers, supra; Spain v. Mountanos, supra;* C.R. C.P. 70; *see Mucci v. Falcon School District # 49, supra.*

In so ruling we are mindful of the sanctity of the doctrine of separation of powers. *See* Colo. Const. art. III; *Anderson v. Lamm*, 195 Colo. 437, 579 P.2d 620 (1978); *People v. Harshfield*, 183 Colo. 155, 156, 516 P.2d 626 (1973); *MacManus v. Love*, 179 Colo. 218, 499 P.2d 609 (1972); *In re Legislative Reapportionment*, 150 Colo. 380, 374 P.2d 66 (1962). However, the trial court in this instance did not order the General Assembly to pass an appropriations bill or to undertake any other legislative act, nor did the trial court order officials of the executive branch to perform unlawful acts. *See Spain v. Mountanos, supra.* It simply directed the appropriate state officials to pay a sum of money out of funds that the General Assembly had already appropriated, *see Mandel v. Myers*, 29 Cal.3d 531, 174 Cal.Rptr. 841, 629 P.2d 935 (1981), an action "otherwise authorized by law." C.R.C.P. 70.

"Indeed, this fundamental separation of powers principle has particular force in instances, such as the present case, in which the Legislature attempts to void the effect of a court judgment which determines that the government itself is obligated to pay a sum of money to an individual. If the Legislature in such a case were empowered to reexamine the merits of litigation and to ignore a particular judgment whenever it so chose, the myriad safeguards of the judicial process would come to naught and one party to a lawsuit would in effect become both litigant and judge. In our view it is difficult to imagine a clearer example of legislative usurpation of judicial authority." *Mandel v. Myers, supra.*

 Defendant's final contention that the trial court erred in considering evidence not in the record and not subject to judicial notice in arriving at its decision is without merit. The trial court was merely taking notice of what was undisputed in this case, that the General Assembly had failed to pass an appropriation bill for the payment of the judgment for attorney fees during the reasonable time allotted by the trial court.

Judgment affirmed.

BERMAN and METZGER, JJ., concur.