Ronald PASSARELLI,
Plaintiff-Appellee,

v.

Gail SCHOETTLER and State of
Colorado, Defendants-Appellants.

No. 85SA208.

Supreme Court of Colorado,
En Banc.

Sept. 8, 1987.

As Modified on Denial of Rehearing
Oct. 5, 1987.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Kenneth S. Canfield, Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice Knaizer, Asst. Atty. Gen., Denver, for defendants-appellants.

KIRSHBAUM, Justice.

■ Appellants Colorado State Treasurer Gail Schoettler and the State of Colorado (collectively "the State") appeal the trial court's order declaring a portion of section 31-4-504.5, 12B C.R.S. (1986), unconstitutional and awarding the appellee, Ronald Passarelli, reimbursement for expenses he incurred in a recall election resulting in his retention in public office.[1]  We affirm.

I

While serving as a Trinidad, Colorado, city councilman, Passarelli became the subject of a recall election held in April of 1977.  He incurred expenses of $6,970.14 during his successful campaign.  Relying upon article XXI, section 4, of the Colorado Constitution, which expressly requires reimbursement from the state treasury of campaign expenses incurred by incumbent public office holders who prevail in recall elections, he filed a formal request for reimbursement of his expenses with the Secretary of State.  No statutory procedures for reimbursing local officials for recall election expenses were in existence when Passarelli requested repayment.  On the advice of the Attorney General, the Secretary of State denied Passarelli's request on the ground that specific enabling legislation was necessary for implementation of this constitutional provision.

In 1979, the General Assembly enacted section 31-4-504.5, authorizing reimbursement of expenses to local officials who successfully retain their offices in recall elections.  The statute limits the total amount of reimbursement to a sum equal to ten cents per voter.  In accordance with section 31-4-504.5, the General Assembly appropriated $170 to reimburse Passarelli.  Act approved May 2, 1980, ch. 33, § 1, 1980 Colo.Sess.Laws 275.  Although Passarelli accepted this sum, he reserved the right to institute legal proceedings for the balance of his expenses and subsequently commenced this action.

At trial only two witnesses testified, both of whom were called by Passarelli.  Floyd Ciruli, a political campaign manager and marketing analyst experienced in recall election campaigns, testified that recall elections have inherently lower visibility than general elections, requiring incumbents who seek retention to campaign vigorously;  that campaigns in smaller districts are more expensive on a per-voter basis than those in larger districts;  and that no incumbent could mount a successful campaign opposing recall at the rate of ten cents per voter.  Eric Sondermann, a

---

1. Because the constitutionality of a statute is in question, appellate jurisdiction is properly in this court.  § 13-4-110(1)(a), 6 C.R.S. (1973); § 13-4-102(1)(b), 6 C.R.S. (1973).

Gail Schoettler is the current State Treasurer; at the time the trial court rendered its decision, Roy Romer was the State Treasurer.

marketing, communications and political consultant, also testified that an incumbent could not run a successful campaign if limited to expenditures of ten cents per voter.

The trial court concluded that the statutory reimbursement limitation of ten cents per voter set forth in section 31–4–504.5(4) bears no reasonable relationship to any legitimate state interest; has a punitive effect on incumbents subject to recall election in smaller districts; and directly contravenes article XXI, section 4, of the Colorado Constitution. The trial court entered judgment against the State in the amount of Passarelli's unreimbursed expenses of $6,800.14, plus interest.

## II

▆▆▆ Statutes are presumed to be constitutional, and a party asserting that a particular statute is unconstitutional assumes the burden of establishing such assertion beyond a reasonable doubt. *People v. O'Cana,* 725 P.2d 1139 (Colo.1986); *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547 (Colo.1982); *Bollier v. People,* 635 P.2d 543 (Colo.1981). The General Assembly exercises plenary power with respect to appropriations, subject only to constitutional limitations. *Colorado Gen. Assembly v. Lamm,* 704 P.2d 1371 (Colo.1985); *Anderson v. Lamm,* 195 Colo. 437, 579 P.2d 620 (1978); *MacManus v. Love,* 179 Colo. 218, 499 P.2d 609 (1972). The State initially argues that section 31–4–504.5(4) is the product of the constitutional exercise of the General Assembly's plenary appropriations power and that article XXI, section 4, of the Colorado Constitution does not limit such appropriations power. We disagree.

Section 31–4–504.5 provides:

**Incumbent not recalled—reimbursement.** (1) If at any recall election the incumbent whose recall is sought is not recalled, he shall be repaid from the state treasury for any money actually expended by him as expenses of such election when such expenses are authorized by this section.

(2)(a) Authorized expenses shall include, but are not limited to, moneys spent in challenging the sufficiency of the recall petition and in presenting to the voters the official position of the incumbent, to include campaign literature and advertising and the maintaining of a campaign headquarters.

(b) Unauthorized expenses shall include, but are not limited to, moneys spent on challenges and court actions not pertaining to the sufficiency of the recall petition; personal expenses for meals, lodging, and mileage for the incumbent; costs of maintaining a campaign staff; reimbursement for expenses incurred by a campaign committee which has solicited contributions; reimbursement of any kind for employees in the incumbent's office; and all expenses incurred prior to the filing of the recall petition.

(3) The incumbent shall file a complete and detailed request for reimbursement within sixty days after the date of the recall election with the governing body of the municipality holding the recall election, who shall then review the reimbursement request for appropriateness under subsection (2) of this section and refer such request, with recommendations, to the controller within thirty days after receipt of the reimbursement request.

(4) The general assembly shall provide appropriations for such purpose, but in no event shall the sum appropriated exceed an amount equal to ten cents per voter.

The trial court concluded that this statute in general properly establishes a procedure for distinguishing the kinds of expenses for which officials who successfully retain their offices in recall elections may be reimbursed. The parties do not question that ruling.

The State does challenge the trial court's further conclusion that section 31–4–504.5(4) violates article XXI, section 4, of the Colorado Constitution. Article XXI of the Colorado Constitution establishes a procedure for the initiation and conduct of recall elections and provides that every elected public officer may be recalled by the electors through such procedure. Section 4 of article XXI, which places limitations on

the recall procedure, provides in pertinent part:

> If at any recall election the incumbent whose recall is sought is not recalled, he shall be repaid from the state treasury any money authorized by law and actually expended by him as expenses of such election; and the legislature shall provide appropriations for such purpose.

. . . .

> This article is self-executing, but legislation may be enacted to facilitate its operations, but in no way limiting or restricting the provisions of this article, or the powers herein reserved.

The State argues that the language requiring repayment of "any money authorized by law" delegates to the General Assembly complete discretion to determine the amount of money to be reimbursed, restricting that discretion only to the extent that money may not be appropriated for expenses not actually incurred. In our view, this argument accords those five words undue emphasis and fails to give appropriate weight to the strong mandatory statements of article XXI, section 4, requiring that the successful incumbent "shall" be repaid, providing that the legislature "shall" provide appropriations for such purpose, and expressly prohibiting the legislature from limiting or restricting these self-executing provisions. *See, e.g., In re Interrogatories Propounded by the Senate Concerning H.B. 1078,* 189 Colo. 1, 536 P.2d 308 (1975); *Yenter v. Baker,* 126 Colo. 232, 248 P.2d 311 (1952). These mandatory statements emphasize the primary purpose of this constitutional provision to assure incumbents of reasonable reimbursement of expenses incurred in recall elections. It is our responsibility to make certain that neither this purpose nor the clear language expressing it is ignored or rendered ineffective by our statutory construction. *See, e.g., Colorado Ass'n of Public Employees v. Lamm,* 677 P.2d 1350 (Colo.1984); *Colorado State Civil Serv. Employees Ass'n v. Love,* 167 Colo. 436, 448 P.2d 624 (1968).

Courts must, whenever possible, construe statutes to conform to constitutional standards. *People v. New Horizons, Inc.,* 200 Colo. 377, 616 P.2d 106 (1980). While the role of the courts is not to determine whether particular legislation is wise or desirable, *Kallenberger v. Buchanan,* 649 P.2d 314 (Colo.1982); *Winkler v. Colorado Dep't of Health,* 193 Colo. 170, 564 P.2d 107 (1977), to withstand constitutional challenge statutory provisions must, at a minimum, have a reasonable basis in fact and bear a reasonable relationship to a legitimate governmental interest, *see Lee v. Colorado Dep't of Health,* 718 P.2d 221 (Colo.1986); *Smith v. Charnes,* 649 P.2d 1089 (Colo.1982); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980).

Here, the evidence at trial established that under the circumstances of this case the ten cents per voter limitation has no reasonable basis in fact. It is undisputed that all of Passarelli's expenses qualified for reimbursement under the guidelines set forth in section 31–4–504.5(2), that the expenses were reasonably and necessarily incurred, and that no incumbent in his position could survive a recall election if limited to expenditures of ten cents per voter. Given this evidence, acceptance of the State's argument that the ten cents per voter limitation is merely part of the General Assembly's power to determine what expenses may be reimbursed would render meaningless for Passarelli the constitutional mandates that successful incumbents shall be repaid their expenses and that the General Assembly may not limit or restrict the provisions of article XXI granting such repayment.

This constitutional provision ensures that public officials who face recall elections will not be deterred from seeking to continue their governmental responsibilities because of the prospect of having to pay campaign expenses even if retained in office, and this result is accomplished by requiring reimbursement of reasonable and necessary costs while permitting the General Assembly to define reasonable categories of reimbursement costs. To the extent the financial limit approved by the General

Assembly prohibits a particular incumbent who is successful in a recall election from obtaining reasonable sums for reimbursement of reasonable and necessary recall election costs, section 31–4–504.5(4) renders meaningless the specific restriction of article XXI, section 4. The only policy goal accomplished in such circumstance—fiscal restraint—is precisely the goal the people have prohibited by means of this constitutional provision. *See Colorado Gen. Assembly v. Lamm,* 704 P.2d 1371; *Anderson v. Lamm,* 195 Colo. 437, 579 P.2d 620; *MacManus v. Love,* 179 Colo. 218, 499 P.2d 609; *accord, e.g., State ex rel. Walker v. Link,* 232 N.W.2d 823 (N.D. 1975) (legislature cannot, without constitutional amendment, refuse to fund a constitutionally mandated function).

The State also suggests that the ten cents per voter reimbursement limit in effect furthers the important constitutional recognition of the right of the people to exercise their power to recall an elective official. The power of recall unquestionably is a fundamental constitutional right of the people, and limitations on that power must be strictly construed. *Groditsky v. Pinckney,* 661 P.2d 279 (Colo.1983); *Hazelwood v. Saul,* 619 P.2d 499 (Colo.1980); *Bernzen v. City of Boulder,* 186 Colo. 81, 525 P.2d 416 (1974). Like article V, section 1, of the Colorado Constitution, which grants the power of initiative and referendum, the amendment granting the recall power came about as the result of popular distrust of government and the people's desire to retain a direct voice in government and direct control over legislation. *See* R. Lorch, *Colorado's Government,*

184–85 (1983); C. Martin & R. Gomez, *Colorado Government and Politics,* 176–81 (1964). Article XXI, itself initiated by the people, reflects the desire by the people to ensure the existence of checks on legislative action or inaction through voter-initiated proposals. *Cf. Colorado Project—Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972) (initiative provisions of the constitution reserve to the people the power to ensure consideration of particular laws independent of action by the General Assembly).

By virtue of section 4 of article XXI, the people themselves have placed several limitations on the recall process. For example, this section provides that generally no recall petition may be circulated or filed against an officer who has served less than six months and places limitations on the ability to file more than one recall petition against an officer during the term for which the officer was elected. The limitations set forth in this section provide a balance essential to the political process. The reimbursement provision in particular assists in ensuring that incumbents commit the resources necessary to challenge the sufficiency of a recall petition and to publicize their views, thus promoting an environment in which the voters are capable of reaching an informed decision. As one witness pointed out at trial, in this case the ten cents per voter limit does not cover the cost of mailing even a single letter to each voter.[2] In view of the clear language of the Constitution, as well as the uncontradicted evidence adduced at trial, we conclude that, as applied to the facts of this case, section 31–4–504.5(4) violates article

2. In 1979, the General Assembly also enacted statutes authorizing reimbursement of recall campaign expenses to state officers, § 24–9.5–109, 10 C.R.S. (1982), and to county officers, § 30–10–209, 12A C.R.S. (1986). Both provisions parallel § 13–4–504.5 in limiting total maximum reimbursements to a sum equal to ten cents per voter. From a review of the legislative history available concerning the three relevant legislative bills, S.B. 300 (codified at § 24–9.5–109), S.B. 282 (codified at § 30–10–209) and H.B. 1219 (codified at § 31–4–504.5), it appears that the intent of the General Assembly in imposing the ten cents per voter limit was one of fiscal conservatism and was based on a

recommendation from the Office of Secretary of State that a ten cents per voter reimbursement was adequate. *E.g.,* Debate on House floor (May 2, 1979); Debate on Senate floor (May 14, 1979) (Senator McCormick, sponsor of two of the relevant bills, agreeing with other Senators that a ten cents per voter reimbursement recommended by Office of Secretary of State was inadequate, but noting that the limit could be adjusted upward in a subsequent legislative session if necessary); *see also* Journal of House of Representatives, 52d Gen. Assembly, 1st Reg. Sess. 1553 (1979) (reducing the limit in S.B. 282 from forty cents to ten cents).

XXI, section 4, of the Colorado Constitution.

### III

█ The State argues that an award of prejudgment interest cannot be made in this case because the State did not waive sovereign immunity and because money was not "wrongfully withheld" under the terms of section 5-12-102, 2 C.R.S. (1986 Supp.), where the money was withheld pursuant to statute.[3] We disagree.

Interest on a judgment is specifically authorized by section 5-12-102. *E.g., Security Ins. Co. v. Houser,* 191 Colo. 189, 552 P.2d 308 (1976). Nothing in section 5-12-102 precludes the award of prejudgment interest in a judgment against the State. Relying principally on *Dietemann v. People,* 78 Colo. 92, 239 P. 1020 (1925), and *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986), the State argues that prejudgment interest cannot be awarded here because the General Assembly has not expressly authorized by statute the assessment of interest. In *Dietemann,* this court held that, in the absence of a statute or rule expressly providing for assessment, costs could not be assessed against a sovereign state unsuccessful as a litigant. Subsequent to the *Dietemann* decision, this court abrogated the doctrine of sovereign immunity and held that the General Assembly had the authority to revive the doctrine in whole or in part. *Evans v. Board of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist. No. 1 in the City & County of Denver,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971). In *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986), this court had occasion to consider the vitality of the *Diete-* *mann* rationale and held that, in the context of a tort claim pursuant to the Colorado Governmental Immunity Act,[4] an award of costs and interest on a judgment entered against a public entity was not prohibited merely because the General Assembly had not expressly provided for such an award. In view of our holding in *Lee,* we find no principled basis upon which to conclude that the doctrine of sovereign immunity may act as a bar to the award of interest under the facts of this case.

█ We similarly reject the State's argument that an award of interest is improper under section 5-12-102 because the money withheld from Passarelli could not have been wrongfully withheld where it was withheld pursuant to section 31-4-504.5. It is the duty of the General Assembly to obey a constitutional mandate, and where a statute and the constitution are in conflict the constitution is paramount law. *People v. New Horizons, Inc.,* 200 Colo. 377, 616 P.2d 106 (1980); *Shroyer v. Sokol,* 191 Colo. 32, 550 P.2d 309 (1976); *Colorado State Civil Serv. Employees Ass'n v. Love,* 167 Colo. 436, 448 P.2d 624 (1968); *Garcia v. District Court,* 157 Colo. 432, 403 P.2d 215 (1965); *Yenter v. Baker,* 126 Colo. 232, 248 P.2d 311 (1952). In light of our conclusion that in this case the General Assembly withheld money from Passarelli in contravention of article XXI, section 4, of the Colorado Constitution, the trial court's award of prejudgment interest against the state was appropriate.

### IV

█ The State finally contends that trial courts cannot enter a money judgment against the State of Colorado because such courts cannot enforce the order by compel-

3. Section 5-12-102, 2 C.R.S. (1986 Supp.), provides in pertinent part:
   **Statutory interest.** (1) Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
   (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs....

4. In response to this court's abrogation of the doctrine of sovereign immunity, the General Assembly enacted the Colorado Governmental Immunity Act, §§ 24-10-101 to -118, 10 C.R.S. (1982 & 1986 Supp.), limiting the maximum judgment which may be recovered against a public entity in a tort action.

ling the General Assembly to appropriate money.[5] However, the issue in this case is whether the trial court properly entered judgment in favor of Passarelli based upon the assertion that the ten cents per voter limit on appropriations in section 31–4–504.-5(4) violates the Colorado Constitution. Sections 24–10–113 and –113.5, 10 C.R.S. (1982), provide procedures for the payment of judgments against a public entity. Questions about the adequacy of these procedures adopted by the General Assembly to facilitate the satisfaction of valid judgments against the state are not properly before this court and, therefore, will not be addressed. *Colorado Dep't of Social Services v. Board of County Comm'rs*, 697 P.2d 1 (Colo.1985).

V

The judgment of the trial court is affirmed.

VOLLACK, J., dissents.

ERICKSON and ROVIRA, JJ., join in the dissent.

VOLLACK, Justice, dissenting:

Part II of the majority's decision interprets the provisions of section 4 of article XXI of the Colorado Constitution to entitle incumbents who are successful in recall elections to reimbursement of reasonable and necessary election costs. Because I believe that section 31–4–504.5(4) is not unconstitutional, and because the majority's holding essentially provides the challenged incumbent with no limitation on his or her right to finance a campaign at state expense, I respectfully dissent.

Section 4 of article XXI provides in pertinent part:

If at any recall election the incumbent whose recall is sought is not recalled, he shall be repaid from the state treasury *any money authorized by law* and actually expended by him as expenses of such election; and the legislature shall provide appropriations for such purpose.

(Emphasis added.) The language of section 4 requires that permissible reimbursements must be authorized by some source independent of section 4. *See Colorado General Assembly v. Lamm*, 700 P.2d 508, 517 (Colo.1985) (interpreting statutory language "under the provisions of law"). This independent source is the General Assembly. Thus, although section 4 states that "[t]his article is self-executing," the Attorney General advised the Secretary of State to deny Passarelli's request for reimbursement absent substantive legislation which would define expenses "authorized by law." Section 31–4–504.5 was enacted to implement section 4 of article XXI, by defining the type and extent of expenses which would be reimbursable. The General Assembly has the power to define the grants of governmental authority articulated by the constitution. Subject to constitutional limitations, the power of the General Assembly over appropriations is absolute. *Colorado General Assembly*, 700 P.2d at 519. It may attach conditions upon the expenditure of those appropriations. *MacManus v. Love*, 179 Colo. 218, 499 P.2d 609 (1972). The majority's opinion would take this power away from the legislature, and I do not think that section 4 of article XXI requires such a result.

The majority's interpretation of section 4 of article XXI, to require "reimbursement of reasonable and necessary costs," maj. op. at 870, has the effect of replacing the court's policy for that of the legislature. It is not the function of this court to rewrite

**5.** The State relies primarily upon: (1) *Rodgers v. Atencio*, 43 Colo.App. 268, 608 P.2d 813 (1979), in which the Court of Appeals held that the courts could not require the General Assembly to appropriate funds for a discretionary social service program; and (2) article V, section 33, of the Colorado Constitution, which provides that the State Treasurer disburse funds only upon appropriation made by law or otherwise authorized by law. *Cf. Colorado Dep't of Social Services v. Board of County Comm'rs*, 697 P.2d 1 (Colo.1985) (*Rodgers* decision inapplicable where the appropriation of funds is mandatory, not discretionary); *Duran v. Lamm*, 701 P.2d 609 (Colo.App.1984) (concluding that a court order constitutes an authorization by law under article V, section 33, and directing State Treasurer to pay a judgment after the General Assembly failed to act).

legislation. *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982). "One of the fundamental tenets of our constitutional system is that courts do not approve or disapprove the wisdom of legislative decisions or the desirability of legislative acts." *Kallenberger v. Buchanan,* 649 P.2d 314, 318 (Colo. 1982). Our sole function is to determine whether the limitations on reimbursable expenses subvert the governing constitutional provision. *See Civil Service Employees v. Love,* 167 Colo. 436, 448 P.2d 624 (1968). If the intent of section 4 was to provide for reimbursement of "reasonable" costs, the drafters could have so provided. Nowhere does the constitutional provision state that an incumbent has a right to reimbursement for "reasonable and necessary costs." Article XXI provides that an incumbent shall be repaid "any money authorized by law," and not "reasonable" expenses. Article XXI must be enforced as written, and neither the courts nor the legislatures have the right to add or take away from that meaning. *Id.* at 445, 448 P.2d 624. Article XXI, in its use of the phrase, "any money authorized by law," leaves it within the power of the General Assembly to define what expenses are reimbursable, and to what extent they are reimbursable. The General Assembly is directed to make appropriations for reimbursement, and the amount of that appropriation is determined by the legislature. "[O]ur state constitution is an instrument of limitation of authority," *People v. Superior Court,* 175 Colo. 391, 394, 488 P.2d 66, 67 (1971), and in the absence of express or necessarily implied constitutional prohibitions, the General Assembly has plenary powers of civil government. *Groditsky v. Pinckney,* 661 P.2d 279, 282 (Colo.1983). As I interpret article XXI, the General Assembly was within its authority in enacting section 31–4–504.5(4).

My chief concern with the majority's opinion is the effect it will have on the public treasury. The General Assembly enacted section 31–4–504.5 to be read and applied in its entirety. To strike subsection (4) and leave the other provisions in place will have the effect of issuing an incumbent a blank check with which to wage his or her campaign. The majority's contention that an incumbent could not survive a recall election if limited to expenditures of ten cents per voter, maj. op. at 870, ignores the fact that an incumbent challenging a recall can raise funds from his or her constituency to pay expenses.

In addition, I disagree with the majority's interpretation of the phrase "any money authorized by law and actually expended," contained in section 4 of article XXI, to mean that "reasonable" expenses must be reimbursed. Instead, I believe that the phrase creates two limitations on the amount of money subject to reimbursement. First, an incumbent not recalled is entitled to reimbursement only for money which the General Assembly has authorized. Second, an incumbent can be reimbursed only for the amount of authorized money actually used for the election.

The wording of article XXI sets forth the people's wishes that incumbents who survive a recall are entitled to some reimbursement of election expenses. The General Assembly has been given the authority to determine the extent of that reimbursement. The majority may believe that the legislative policy decision behind section 31–4–504.4 was not the best or even that it was incorrect, but that does not entitle us to overrule the decision absent a firm conviction that the decision was irrational. *People v. Turman,* 659 P.2d 1368 (Colo. 1983). I believe that such a conviction has not been sufficiently demonstrated by the majority to invalidate section 31–4–504.4. Accordingly, I would uphold the constitutionality of the statute.

I am authorized to state that Justice ERICKSON and Justice ROVIRA join in this dissent.