J. "Al" HURRICANE,
Plaintiff-Appellant,

v.

KANOVER, LTD., Defendant-Appellee.

No. 81SA298.

Supreme Court of Colorado,
En Banc.

Oct. 12, 1982.

Barry D. Roseman, Denver, for plaintiff-appellant.

Gorsuch, Kirgis, Campbell, Walker & Grover, John L. Ferguson, Denver, for defendant-appellee.

LOHR, Justice.

The plaintiff, J. "Al" Hurricane (Hurricane), appeals from a judgment of the Arapahoe County District Court in litigation arising out of the occupancy of an apartment by Hurricane under a lease from Kanover, Ltd. (Kanover). After Hurricane presented his case, the trial court dismissed his complaint against Kanover for interference with the quiet enjoyment of the apartment, outrageous conduct, and intentional or reckless infliction of emotional distress. At that same time the court granted judgment for Kanover on its counterclaim for possession of the apartment, past due rent, and costs. We affirm the judgment.

Hurricane leased an apartment from Kanover for a term beginning in February 1979 and ending in June of that year. He continued in possession after the end of the term and so became a tenant from month to month under the provisions of the lease. Kanover decided to terminate the tenancy effective July 31, 1979, and served Hurricane with an appropriate notice to quit and demand for possession of the premises. See sections 13–40–107 and –108, C.R.S.1973 (1981 Supp.). Hurricane did not leave, so Kanover commenced an unlawful detainer action in Arapahoe County Court under the forcible entry and detainer statute to obtain possession. See section 13–40–101 to –123, C.R.S.1973 (1981 Supp.). Shortly thereafter, Hurricane brought suit against Kanover in Arapahoe County District Court, alleging that Kanover attempted to increase Hurricane's rent and brought the unlawful detainer action for the overriding purpose of retaliating against Hurricane "for the exercise of his constitutional rights of free speech and free association with respect to assisting and advising other tenants about their complaints against [Kanover], his ad-

vocacy of the rights of the tenants in the [apartment] complex, and his advocacy of the rights of tenants generally." Hurricane also claimed that Kanover's actions had the effect of discriminating against him based on his Arabic national origin, his total respiratory disability, and his status as a divorced person having visitation rights with his minor child. Asserting as well that Kanover interfered with his quiet enjoyment of the apartment by frequent rule changes, effective exclusion of his child from use of the swimming pool, and harassment, Hurricane sought damages for outrageous conduct and intentional and reckless infliction of emotional distress.

The unlawful detainer action was then transferred to district court and consolidated with Hurricane's suit against Kanover pursuant to Rule of County Court Civil Procedure 313(b)(1). The case proceeded to a trial to the court without a jury. At the close of plaintiff Hurricane's case, on the motion of Kanover the court dismissed Hurricane's complaint and entered judgment on the forcible entry and detainer claim in favor of Kanover for possession of the premises, past due rent and costs. Hurricane appealed to the Colorado Court of Appeals and his case was transferred to this court.[1]

Hurricane contends that the trial court erred in concluding that he failed to establish retaliatory eviction as an affirmative defense to the unlawful detainer claim and in ruling that the evidence did not support his own claims for outrageous conduct and infliction of emotional distress. Additionally, Hurricane asserts that the forcible entry and detainer statute, as applied here, deprived him of property without due process of law and violated his right to equal protection of the laws. *See U.S. Const.* amend. XIV; *Colo. Const.* Art. II, § 25. We consider these issues in turn.

I.

Hurricane contends that Kanover brought the unlawful detainer action in retaliation for his activities in publicly advocating the cause of tenants' rights and that the doctrine of retaliatory eviction should be adopted as the law of this state and made applicable to evictions motivated by such activities where residential property is involved. In support of this proposition he cites *Edwards v. Habib,* 397 F.2d 687 (D.C. Cir.1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969); *see also* Annot., 40 A.L.R.3d 753 (1971).[2] Moreover, he urges that in establishing retaliatory eviction the tenant should have the initial burden of establishing facts from which the trial court could reasonably infer a retaliatory motive on the part of the landlord, and that then the burden should shift to the landlord to present enough evidence to permit the fact finder to decide that the motives for the eviction were not retaliatory. *Cf. Silberg v. Lipscomb,* 117 N.J.Super. 491, 285 A.2d 86 (1971) (construing a New Jersey statute); *see generally* Note, *Landlord and Tenant—Burden of Proof Required to Establish Defense of Retaliatory Eviction,* 1971 *Wis.L.Rev.* 939 (1971). Because of the trial court's findings, we need not reach these issues.

The trial court's findings are extensive and include the following:

> The Court finds that [Hurricane] has failed to carry his burden of proving that the actions taken by [Kanover] were

1. The case was transferred to this court from the Colorado Court of Appeals pursuant to section 13–4–110(1)(a), C.R.S.1973, because of Hurricane's challenge to the constitutionality of the forcible entry and detainer statute. *See* section 13–4–102(1)(b), C.R.S.1973.

2. In *Edwards v. Habib, supra,* the United States Court of Appeals for the District of Columbia Circuit held that, where eviction from a resi-

dence is based on the tenant's report of housing code violations, the retaliatory motive constitutes a defense to an action by the landlord for possession. As Hurricane recognizes, this principle would have to be extended beyond housing code violation reports to exercise of First Amendment rights to free speech if it were to provide him a defense in the unlawful detainer action now before us.

prompted by or because of [Hurricane's] nationality or his ethnic origin, his health status, marital status or his exercise of rights of association and speech. The Court specifically finds that [Kanover], acting through its representatives, took its actions in not renewing [Hurricane's] lease and terminating his tenancy because of its prior disagreements with [Hurricane] concerning appropriate changes to be made in the lease and [Hurricane's] observance of the rules and regulations of the apartment house complex.

Thus, the court did not limit its findings to a determination that Hurricane had not carried his burden of proof but went on to find that the evidence adduced by Hurricane established that the reasons for termination were different from the discriminatory and retaliatory ones that he asserts in support of his retaliatory eviction, outrageous conduct, and infliction of emotional distress claims.

In support of its findings of ultimate facts quoted above, the trial court made detailed findings about the events that led to termination of the lease. The trial court found that when Hurricane negotiated his lease with Kanover's manager, the manager permitted some unauthorized modifications in the lease form relating to the right of the landlord to reenter, the installation of a dead bolt lock, liberalized guest occupancy rights for Hurricane's son, and the placement of a "no smoking" sign on the apartment door. Although a different representative of Kanover later wrote Hurricane in an effort to refine the changes to make them acceptable to Kanover, no lease revision was ever signed, and as time went on the changes became a matter of irritation and aggravation to Kanover's managers. The trial court also found that on several occasions Kanover's managers determined that Hurricane was in violation of Kanover's apartment regulations by providing his son with keys to the apartment, attempting to utilize the swimming pool with his son during hours when children were not permitted at the pool, and repairing his vehicle in the apartment parking lot without permission. The court found that these violations resulted in confrontations between Hurricane and Kanover's representatives and that following one such encounter Hurricane thumbed his nose at a Kanover agent. On June 30 Kanover attempted to raise Hurricane's rent by $100 per month to induce him to leave. Instead of departing, Hurricane filed a discrimination claim with the Colorado Civil Rights Commission. Kanover then withdrew the rent increase and proceeded to terminate Hurricane's month-to-month tenancy and to seek possession of the apartment by filing the unlawful detainer action now before us.[3]

Although the testimony was somewhat in conflict and was susceptible of different inferences,[4] it is not for us to weigh the evidence or appraise the credibility of

---

**3.** In denying Hurricane's motion for a new trial, the trial court elaborated on its earlier findings as follows:

... there was obviously a personality difference or just a general aura of disagreement and dispute between Mr. Hurricane and representatives of the landlord. And without attempting to ascertain how the dispute started or which party was responsible in initiating the problems, it was fairly obvious to me in hearing the testimony of both parties representing the landlord and Mr. Hurricane that ... there was this conflict between them; that somehow or another colored perhaps the approach of both parties, but certainly may have put Mr. Hurricane in a situation where he had more difficulty doing things that other tenants were able to do or at least when he did something other tenants did, it caused somehow more friction and more static in the air than someone else. But I didn't feel that the evidence indicated that the landlord was taking action against Mr. Hurricane because of his racial or ethnic origins or because of his exercise of certain rights.

**4.** There was evidence that Hurricane took a leading role in tenants' rights activities, received publicity for these efforts, and advised other tenants in Kanover's apartments about their rights as lessees on numerous occasions. There also was evidence that, without adverse consequence, other tenants committed some of the same rule violations that the trial court

the witnesses. *Van Cise, Phillips and Gold-berg v. Jelen,* 197 Colo. 428, 593 P.2d 973 (1979). The trial court's findings have ample support in the record. As they are not clearly erroneous, we are bound by them. *E.g., Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970). There is no merit, therefore, to Hurricane's retaliatory eviction claim, and a consideration of the applicability and scope of the retaliatory eviction doctrine in Colorado is not necessary to the decision of this case. Likewise, the record supports the trial court's specific finding that Hurricane did not establish intentional or reckless infliction of emotional distress or outrageous conduct. *See generally, Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970) (tort of outrageous conduct recognized in Colorado, and elements of the claim delineated).

## II.

### A.

■ We next address Hurricane's contention that he was deprived of property without due process of law by the unlawful detainer procedure. He asserts in his brief that "[a] month-to-month tenancy, such as that existing in this case, in reality involves an expectation of indefinite continued tenancy." He adduced no evidence to demonstrate any objective basis for this claimed expectation. Our statutes expressly provide that month-to-month tenancies may be terminated by either party on notice. Section 13–40–107, C.R.S. 1973. Hurricane does not claim that the procedures prescribed by the statute were not followed. Under these circumstances, Hurricane has shown at most a mere unilateral expectation of continued possession; such a subjective expectancy is not protected by procedural due process. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As the district court concluded,

[O]nce proper notice was given, [Hurricane's] tenancy from month to month was terminated and he had no protectable property interest in a continued tenancy. Because he had no right, under state law, to continue tenancy and no expectancy to continued possession after notice to quit was given, the Fourteenth Amendment guarantees of procedural due process would not apply. [Citing *Perry v. Sindermann, supra; Board of Regents v. Roth, supra.*]

### B.

Finally, we consider Hurricane's assertion that he was deprived of equal protection of the laws because the Colorado Mobile Home Park Landlord-Tenant Act, sections 38–12–201 to –216, C.R.S.1973 (1981 Supp.), gives greater protection to a mobile home tenant when his trailer space tenancy is terminated than is provided to an apartment tenant by the forcible entry and detainer act. Specifically, Hurricane points to the provisions that a landlord may terminate tenancy in a mobile home park space only for statutorily specified reasons, section 38–12–203, C.R.S. 1973 (1981 Supp.), and that a tenant is entitled to notice specifying the reason for termination, section 38–12–202(2), C.R.S. 1973, and is given an opportunity to contest the truth and validity of the asserted reasons, section 38–12–203(2), C.R.S. 1973.

■ Where the statutory classification involves neither a fundamental right nor a suspect class, different classes of persons may be treated differently without violation of equal protection when the classification is reasonable, not arbitrary, and bears a rational relationship to legitimate state objectives. *E.g., People v. McKnight,* Colo., 617 P.2d 1178 (1980).

■ Hurricane does not claim that a suspect class is implicated here. He asserts, however, that the legislative distinction infringes his right to equality of justice under

found were the precipitating causes of Hurri-                cane's eviction.

*Colo.Const.* Art. II, § 6, and that such right is fundamental. That section provides:

> Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

We construed this constitutional provision in a case in which the appellant challenged the constitutionality of the workmen's compensation act as a deprivation of his right to full recovery in tort. We held that

> [I]t is well settled that [*Colo.Const.* Art. II, § 6] does not prevent the legislature from changing the law which creates a right. Rather, this section simply provides that if a right does accrue under the law, the courts will be available to effectuate such right. *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698; *Vogts v. Guerrette,* 142 Colo. 527, 351 P.2d 851. Equal protection is not involved.

*O'Quinn v. Walt Disney Productions, Inc.,* 177 Colo. 190, 195, 493 P.2d 344, 346 (1972).

Similarly, here, access to the courts is not jeopardized by the legislatively created distinctions between the nature of the rights available to mobile home space tenants and those accorded to apartment tenants.

Because neither a fundamental right nor a suspect class is involved in the present case, the equal protection sufficiency of the forcible entry and detainer statute must be determined by applying the rational basis test. *E.g., People v. McKnight, supra.* As the trial court concluded,

> Obviously the nature of a mobile home is such that it requires a different kind of effort and undertaking in its relocation and it cannot be relocated in any ordinary residential quarters. The uniqueness of the mobile home structure and the problems involved in its relocation afford ample differences to substantiate and support its special treatment by the General Assembly.

We believe these practical differences between apartments and mobile home spaces in the difficulty of relocation upon termination of a lease provide a rational basis for the additional substantive and procedural restrictions on lease termination found in the Mobile Home Park Landlord-Tenant Act and further the legitimate governmental objective of protecting the health, safety and welfare of those citizens who reside in mobile home parks. Accordingly, the legislative distinctions are consistent with equal protection of the laws.

We affirm the judgment of the district court.

LEE, J., does not participate.