Lawrence Wayne LEE and Carol Lee, and Carol Lee, on Behalf of the minor children, Tammy Lee, Shana Lee, Jered Lee, Jeremiah Lee, and Joshua Lee, Plaintiffs-Appellants,

v.

The COLORADO DEPARTMENT OF HEALTH, a State Agency for the State of Colorado, and Dennis John Plog, individually, Defendants-Appellees and Cross-Appellants.

No. 83SA414.

Supreme Court of Colorado, En Banc.

March 31, 1986.

Rehearing Denied April 14, 1986.

As Modified on Denial of Rehearing May 2, 1986.

222

James C. Anesi, Durango, for plaintiffs-appellants.

Hamilton, Shand & McLachlan, Michael E. McLachlan, Keith Newbold, Durango, for defendants-appellees and cross-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H.

Forman, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for amicus curiae, Colorado Atty. Gen.'s Office.

Susan K. Griffiths, Tami A. Tanoue, Denver, for amicus curiae, Colorado Mun. League.

QUINN, Chief Justice.

This appeal raises several questions concerning the construction and application of the Colorado Governmental Immunity Act, §§ 24–10–101 to –118, 10 C.R.S. (1982 & 1985 Supp.), and a number of other issues as well. The appellants, Lawrence Wayne Lee (Wayne Lee), his wife Carol Lee, and the Lees' five children were plaintiffs in a negligence action filed against the Colorado Department of Health (Department) and its employee, Dennis Plog, as a result of a motor vehicle collision between a pickup truck operated by Wayne Lee and a pickup truck operated by Plog in the course of his employment with the Department. The trial court submitted to the jury the claim of Wayne Lee for personal injuries, the claim of his wife for loss of consortium, and the claim on behalf of the Lee children for loss of their father's companionship and support. After the jury returned verdicts in favor of the Lees, the trial court made various rulings and entered judgment on the basis of those rulings, some of which are now challenged by the Lees as appellants and others by the Department and Plog as cross-appellants.[1] We affirm in part and reverse in part, and we remand the case to the district court for a determination of the amount of costs and interest, if any, that should be added to the judgment in favor of Wayne Lee.

I.

A brief summary of the factual and procedural history of the case will provide the context for the issues raised on appeal. On November 20, 1979, a pickup truck owned by the Department and driven by Dennis Plog collided with a vehicle driven by Wayne Lee on County Road 234 in La Plata County, Colorado. The Department had a liability policy in effect on the date of the accident insuring itself and its employees in the amount of $150,000 for each person and $400,000 for each occurrence and also containing a "Supplementary Payments" provision with respect to costs and interest.[2] As a result of the accident Lee allegedly suffered serious and disabling injuries. On February 26, 1980, Lee filed a negligence action against the Department and Plog and demanded judgment in the amount of $228,000. Lee's wife Carol also sued in the same complaint and requested an award of $25,000 for loss of consortium. The Department and Plog answered the original complaint and, while admitting that the accident occurred while Plog was operating the pickup truck in the course of his employment with the Department, denied any negligence on Plog's part and asserted the negligence of Lee as an affirmative defense to the claims.

The Lees subsequently filed a motion to amend their complaint, and the court granted the motion. The amended complaint increased Wayne Lee's demand for judgment to $1,128,000, increased his wife Carol's demand on her loss of consortium claim to $150,000, and included claims in the amount of $150,000 on behalf of each of the Lees' five children for loss of the companionship and support of their father. Although the Department and Plog did not file an answer to the amended complaint, they did file, shortly before trial, a partial summary judgment motion requesting that any judgment be limited to $150,000 as provided in section 24–10–114(1)(a), 10 C.R.S. (1982), and be entered only against the state. The trial court deferred ruling

---

1. The Lees originally filed their appeal in the court of appeals, but due to their constitutional challenge to certain aspects of the Colorado Governmental Immunity Act this court accepted jurisdiction over the appeal in accordance with sections 13–4–102(1)(b) and 13–4–110, 6 C.R.S. (1973).

2. As far as we can determine, the insurance policy was not presented to the trial court. It was, however, filed with this court after oral argument.

on the defendants' motion until the completion of the trial.

The case was tried to a jury. At the conclusion of the evidence, the trial court instructed the jury to consider the negligence of Wayne Lee not only in connection with his claim for personal injuries but also in regard to his wife's claim for loss of consortium and the children's claim for loss of parental companionship and support. The jury by special verdict found that Wayne Lee sustained total damages of $606,409.38 as a result of the combined negligence of Dennis Plog and himself, and attributed 51% of the negligence to Plog and the Department and 49% to Lee. The jury made an identical apportionment of negligence on Carol Lee's claim for loss of consortium and determined her total damages to be $100,000. The jury also returned verdicts in favor of the Lee children, apportioning the negligence at 51% to the defendants and 49% to Wayne Lee, and fixed the total damage sustained by each child at $10,000.

After the verdicts were returned, the trial court ruled that section 24–10–114(1), 10 C.R.S. (1982), limited the amount of damages recoverable by Wayne Lee to $150,000 and accordingly ordered the entry of judgment on his behalf for that amount plus interest at 9% from the filing of the complaint and some but not all of his requested costs. The court also ruled that the claim of Carol Lee for loss of consortium constituted a separate injury for purposes of the Governmental Immunity Act. Ruling that the 49% negligence which the jury attributed to her husband must be imputed to Carol Lee, the court reduced the jury award and entered judgment on her behalf in the amount of $51,000. Finally, the trial court ruled that the claim of the Lee children for loss of parental companionship

and support was not cognizable in Colorado and accordingly set aside the jury verdicts entered in their favor[3].

On appeal, the Lees argue that the Department and Plog waived any right to limit the judgments to the amounts specified in the Governmental Immunity Act by failing to answer the amended complaint and by failing to present evidence and to tender jury instructions on the judgment limitations. They also argue that the Governmental Immunity Act does not limit the total judgment that may be entered against a public entity and its employee, but rather only limits the amount ultimately recoverable from each defendant, and that the trial court's interpretation of the Act limiting recovery from both the public entity and its employee to a single judgment of $150,000 violates equal protection of the laws. The Department and Plog, as cross-appellants, contend that the trial court erred in awarding interest and costs to Wayne Lee in excess of the statutory limit of $150,000. Carol Lee asserts that the trial court erred in attributing to her consortium claim the negligence of her husband, thereby reducing the jury's award on her claim by the percentage of her husband's negligence. Finally, the Lee children challenge the trial court's setting aside the jury awards entered on their claim for loss of parental companionship and support. We will consider these claims in the order stated.

## II.

The Lees initially argue that the Department and Plog waived any right to limit the judgment established by sections 24–10–114 and 24–10–118(1)(b), 10 C.R.S. (1982), of the Governmental Immunity Act, because they failed to answer the amended complaint and also failed to present evi-

---

**3.** The court also found that, regardless of whether loss of companionship and services were recognized as a cause of action, the claim of daughter Tammy Lee was barred because she failed to notify the state of her claim within 180 days of the discovery of her injury, as required by section 24–10–109(1), 10 C.R.S. (1973). The court determined that Tammy Lee knew of the injuries to her father and thus the injury to herself, ries to her father and thus the injury to herself, when she turned eighteen in September 1981, but that she failed to notify the state until nearly a year later. The plaintiffs contest this finding on appeal as well. Because of our decision not to recognize a nonstatutory claim for loss of parental companionship and services on behalf of children, we find it unnecessary to decide whether Tammy Lee's claim was barred by her late notice to the state.

dence and to tender jury instructions on the statutory limitations. We find their argument to be without merit.

Section 24–10–114 provides, in pertinent part, as follows:

> (1) The maximum amount that may be recovered under this article shall be:
>
> (a) For any injury to one person in any single occurrence, the sum of one hundred fifty thousand dollars;
>
> (b) For an injury to two or more persons in any single occurrence, the sum of four hundred thousand dollars; except in such instance, no person may recover in excess of one hundred fifty thousand dollars.

Subsection (2) of section 24–10–114 authorizes a public entity to insure itself and its employees against all or any part of its liability in an amount in excess of the limits specified in subsection (1), in which event "recovery may be had in an amount not to exceed the limitations of insurance coverage." Section 24–10–118(1)(b) states that the maximum amounts that may be recovered in any such action against a public employee shall be as provided in section 24–10–114.

■ This court has previously held that the limitations on recovery set forth in these sections do not constitute a waivable affirmative defense, but rather serve as a limit on the jurisdiction of the court to enter judgment in an amount greater than the limits imposed by the Act. *City of Colorado Springs v. Gladin*, 198 Colo. 333, 599 P.2d 907 (1979). The jurisdictional limits to a court's authority are fixed by law and cannot be waived by the action or inaction of the parties. *McCoy v. McCoy*, 139 Colo. 105, 336 P.2d 302 (1959); *Solliday v. District Court*, 135 Colo. 489, 313 P.2d 1000 (1957). The statutory limits on governmental liability created by section 24–10–114(1), therefore, are self-executing provisions of law that the trial court is required to apply whenever a public entity is sued for an injury resulting from those activities or conditions which the General Assembly has decreed will render the public entity liable in an action for damages.

■ Section 24–10–106(1)(a), 10 C.R.S. (1982), creates legal liability for a public entity in a tort action for damages "for injuries resulting from ... [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of his employment, except emergency vehicles operating within the provisions of section 42–4–106(2) and (3), C.R.S. (1973)." Here, the Department's status as a public entity is undisputed, since both the Department and Plog admitted in their answer to the original complaint that at the time of the collision Plog was operating a motor vehicle in the course of his employment with the Department. It follows, therefore, that the Department and Plog were not required either to assert affirmatively the monetary limitations on judgments established by the Governmental Immunity Act or to present evidence or tender jury instructions on those limitations in order to confine any judgment on behalf of Wayne Lee to the statutory amounts set forth in section 24–10–114.[4]

### III.

■ Wayne Lee contends that sections 24–10–114(1) and 24–10–118(1)(b), 10 C.R.S.

---

**4.** The failure of the Department and Plog to file an amended answer, by itself, did not result in an admission of any of the allegations made by the Lees in either the original complaint or the amended complaint. Nothing in the rules of civil procedure requires that a defendant file an amended answer in response to an amended complaint in order to preserve the defenses or denials made in an original answer, although a defendant certainly may elect to file an amended answer in response to new allegations made by the plaintiff in the amended complaint. *See* 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, p. 391 (1971). Only if a defendant fails to respond at all to a claim or allegation of the plaintiff—that is, the defendant neither raises an affirmative defense to the claim nor denies the allegation in either his original answer or in a subsequent responsive pleading—would that claim or allegation be taken as admitted. *See LaGorga v. Kroger Co.*, 407 F.2d 671 (3rd Cir.1969) (failure to deny allegations of amended complaint does not constitute an admission by the defendant of such allegations where the allegations were substantially the same as those in the original complaint which had been denied in the defendant's original answer).

(1982), do not limit the total judgment that may be entered against a public entity or a public employee, but rather only limit the amount that ultimately may be recovered from each defendant, thereby permitting an injured party who obtains a judgment in excess of $150,000 to seek a $150,000 satisfaction from the public entity and an additional satisfaction on the remainder of the judgment, up to $150,000, from the public employee. Wayne Lee also argues that sections 24–10–114(1) and 24–10–118(1)(b), if construed so as to limit the recovery from both the public entity and the public employee to a single award of $150,000, violate the guarantee of equal protection of the laws under the United States and Colorado Constitutions. U.S. Const. amend. XIV; Colo. Const. art. II, § 25.[5] We conclude that the Governmental Immunity Act limits the judgment that may be entered against a public entity and its employee to $150,000 for an injury to one person in a single occurrence and $400,000 for injuries to two or more persons in a single occurrence, that the Act further contemplates that the public entity rather than the public employee should be responsible for satisfying the judgment, and that the judgment limitations created by the Act do not violate equal protection of the laws. Wayne Lee, therefore, is accordingly entitled to a single award of $150,000 to be satisfied by the Department, and he may not seek additional satisfaction from Plog.

### A.

We consider first the amount of judgment that can properly be entered in a case in which the public entity and its employee are sued. As noted above, section 24–10–114(1)(a) limits the amount that may be recovered under the Governmental Immunity Act to $150,000 for "any injury to one person in a single occurrence." Section 24–10–114(1)(b) limits the amount to $400,-000 "for an injury to two or more persons in any single occurrence," subject to the exception that in no such instance shall any person "recover in excess of one hundred fifty thousand dollars." Section 24–10–118(1)(b) limits the amount recoverable against a public employee to the amounts specified in section 24–10–114.

The statutory scheme clearly evidences a legislative intent to limit the amount of the tort victim's award on the basis of the injury suffered in a single occurrence. This obvious legislative purpose adequately refutes the notion that a tort victim should be permitted to cumulate an award beyond the $150,000 limitation according to the number of public entities and public employees joined as defendants in the lawsuit. When the language of the statute is plain and its meaning clear, it should be interpreted and applied as written. *E.g., Southard v. Miles,* 714 P.2d 891, 898 (Colo.1986); *Civil Service Employees Association v. Love,* 167 Colo. 436, 445, 448 P.2d 624, 627 (1968). The Governmental Immunity Act unambiguously limits the judgment that the trial court could have entered against the Department and Plog to $150,000 for the injury to Wayne Lee.

### B.

We turn next to the question of the legal responsibility for satisfying a judgment entered against a public entity and a public employee. Section 24–10–113(1), 10 C.R.S. (1982), provides that a public entity is responsible for the payment of any final judgment against itself. Section 24–10–110(1)(b)(I), 10 C.R.S. (1982), also makes the public entity liable for:

> The payment of all judgments and settlements of claims against any of its public employees where the claim against the public employee arises out of injuries sustained from an act or omission of such employee occurring during the per-

---

5. The right to equal protection of the laws is included within the concept of due process of law in article II, section 25 of the Colorado Constitution. *E.g., Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980); *People v. Max,* 70 Colo. 100, 198 P. 150 (1921). Although the Lees cite article II, section 6 of the Colorado Constitution, which deals with access to the courts, in support of their equal protection argument, the question is more properly considered under the Due Process Clause of article II, section 25.

formance of his duties and within the scope of his employment, except where such act or omission is willful and wanton or, in the case of public entities other than the state of Colorado, where the defense of sovereign immunity is available to the public entity, and provided that the employee does not compromise or settle the claim without the consent of the public entity.

■ The effect of these statutory provisions, when read in conjunction with the statutory recovery limitations applicable to both a public entity and a public employee as provided in sections 24–10–114(1)(a) and 24–10–118(1)(b), is twofold. First, the statutory provisions limit the maximum amount of judgment recoverable against all public entity and public employee defendants to $150,000 for any injury to one person, and $400,000 for injuries to two or more persons, in a single occurrence. Second, the same statutory provisions render the public entity exclusively responsible for the payment of the entire judgment whenever the claimant's injury is caused by the negligence of a public employee during the performance of his duties and within the scope of his employment. In this case, therefore, the Department bears the sole and exclusive responsibility for satisfying the judgment of $150,000 entered in favor of Wayne Lee, and Wayne Lee may not seek further satisfaction from Plog, the public employee.

### C.

Wayne Lee claims that this construction of the recovery limitations of the Governmental Immunity Act violates equal protection of the laws by effectuating an arbitrary classification between public entities, which are subject only to limited liability under the statutory scheme, and private tortfeasors, who are responsible for all harms caused by their negligence. We find no merit in this constitutional challenge.

■ In the absence of a statutory infringement on a fundamental right or the creation of a suspect class, neither of which is involved here, equal protection of the laws is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. *E.g., Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo. 1982); *Smith v. Charnes,* 649 P.2d 1089 (Colo.1982); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980). The party challenging the statutory classification bears the burden of proving beyond a reasonable doubt that the statutory classification is indeed unreasonable or, if reasonable, is unrelated to any legitimate governmental objective. *E.g., People v. Velasquez,* 666 P.2d 567 (Colo.1983), *appeal dismissed sub nom. Velasquez v. Colorado,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984); *Dawson v. Public Employees Association,* 664 P.2d 702 (Colo.1983); *Hurricane,* 651 P.2d 1218; *Smith,* 649 P.2d 1089.

■ We are convinced that those provisions of the Governmental Immunity Act which limit the amounts recoverable by tort victims do not violate equal protection of the laws. The statutory classification limiting the amounts recoverable against a public entity is based on real differences in fact between governmental and private tortfeasors. Public entities are responsible for providing a vast array of governmental services to the public and, as a result, are exposed to far greater liability and risks than a private individual. Moreover, the public entity, unlike the private individual, does not have the option of declaring bankruptcy or going out of business when subjected to tort liability, but rather must continue to carry out its responsibility to the public. The legislative decision to limit the public entity's liability to $150,000 for any injury to one person and $400,000 for any injury to two or more persons in a single occurrence, therefore, proceeds from actual differences in the magnitude and character of the functions assumed by public entities and in the effect of greater potential liability exposure on the public entity's ability to continue its governmental functions.

We have no hesitation in concluding that this statutory classification is reasonably related to the governmental objective of

providing fiscal certainty in carrying out the manifold responsibilities of government. By limiting the liability of a public entity to a fixed amount, the Governmental Immunity Act protects the public entity against the risk that unforeseen and unlimited tort judgments will deplete the public coffers and result in the termination or substantial curtailment of important governmental functions. The limitations on governmental liability in sections 24–10–114(1) and 24–10–118(1)(b), therefore, satisfy equal protection of the laws.

## IV.

We now consider the claim of the Department and Plog that the trial court erred in awarding costs and interest to Wayne Lee above the statutory limit of $150,000. In the absence of an insurance policy providing for insurance coverage in an amount in excess of the statutory limits specified in section 24–10–114(1), 10 C.R.S. (1982), see § 24–10–114(2), 10 C.R.C. (1982), we interpret the Governmental Immunity Act to impose a maximum limitation of $150,000 on the total amount recoverable against a public entity for a single injury in a single occurrence. Because on the date of the accident an insurance policy provided liability insurance to the Department and its employees in the amount of $150,000 for each person and $400,000 for each accident and contained provisions with respect to the payment of costs and interest, and because the trial court did not consider the policy provisions in determining whether and to what extent costs and interest may properly be assessed against the Department in connection with the $150,000 judgment in favor of Wayne Lee, it is necessary to reverse that part of the judgment awarding costs and interest to Wayne Lee in excess of this $150,000 limitation and to remand the case to the district court for the purpose of resolving the issues of costs and interest in accordance with the terms of the policy.

Generally, unless there is a prohibitory statute or rule, a trial court may exercise its discretion in awarding costs to a prevailing party. *Rossmiller v. Romero*, 625 P.2d 1029 (Colo.1981). C.R.C.P. 54(d), however, expressly provides that "costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law." In *Dietemann v. People*, 78 Colo. 92, 239 P. 1020 (1925), which was decided prior to the promulgation of C.R. C.P. 54(d), this court held that appellate costs could not be assessed against the state, the unsuccessful party on the appeal, because neither a statute nor a rule authorized such an assessment against the sovereign. Subsequent to the promulgation of Rule 54(d), the court of appeals in *Shumate v. State Personnel Board*, 34 Colo. App. 393, 528 P.2d 404 (1974), interpreted the rule to preclude the assessment of costs against the state or its agencies unless specifically authorized by the legislature. If *Dietemann* and *Shumate* are still good law, their application here would serve as a total bar to the award of costs in favor of Wayne Lee.

A prevailing party in an action to recover damages for personal injuries is entitled to the inclusion of interest on the judgment, § 13–21–101, 6 C.R.S. (1985 Supp.), and nothing in the interest statute expressly precludes the award of interest in a judgment against the state. If, however, the rationale of *Dietemann* and *Shumate* is extended to an award of interest, the recovery of interest from the state should also be prohibited in the absence of express statutory authorization.

We do not interpret C.R.C.P. 54(d) or the Governmental Immunity Act so narrowly as to prohibit an assessment of costs and interest on a judgment entered against a public entity merely because the legislature has not seen fit to expressly provide for such assessments. In light of the general rule that a prevailing party may recover costs unless a statute or rule specifically prohibits such an award, *Rossmiller*, 625 P.2d 1029, and in view of the fact that nothing in the Governmental Immunity Act prohibits an assessment of costs against the state, we reject the rationale of *Dietemann* and *Shumate* in the context of a tort claim pursuant to the Governmental

Immunity Act and thus conclude that a public entity which has been sued pursuant to the Act may be taxed costs in connection with the judgment entered against it. For similar reasons, a trial court may also assess interest on such a judgment.

Although costs and interest may be included in any judgment entered against a public entity pursuant to the Governmental Immunity Act, we hasten to add that in the absence of a provision in an insurance policy expressly providing for the payment of costs and interest in addition to the $150,-000 liability limitation, the total amount of the judgment, inclusive of interest and costs, must not exceed the recovery limitations imposed by section 24–10–114(1)— that is, a total of $150,000 for an injury to one person in a single occurrence and a total of $400,000 for injuries to two or more persons in a single occurrence. §§ 24–10–114(1)(a), (b), 10 C.R.S. (1982). This restriction on costs and interest finds its source in one of the basic objectives of the Governmental Immunity Act, which, as noted above in Part III. C., is to place an outer limit on the legal liability of a public entity in order to provide fiscal certainty to governmental operations and thereby secure the continuing availability of these services to the public. Costs and interest will vary from case to case, and this variability is incompatible with the fiscal certainty essential to ongoing governmental operations. When the public entity has chosen to obtain insurance in an amount in excess of the statutory limitations, however, there is no risk of depleting public funds as long as the recovery does not exceed the amount of insurance coverage. Section 24–10–114(2), 10 C.R.S. (1982), expressly authorizes this increase of liability by providing, as pertinent here, that, notwithstanding the $150,000 per person and the $400,000 per occurrence statutory limitation on liability,

if a public entity provides insurance coverage to insure itself against all or any part of its liability for any injury or to insure a public employee acting within the scope of his employment against all or any part of his liability for injury and the insurance coverage is in an amount in excess of the limits specified in subsection (1) of this section, then recovery may be had in an amount not to exceed the limitations of insurance coverage....

 In this case, the insurance policy in effect on the date of the accident contains a "Supplementary Payments" section addressing the company's obligation to pay, in addition to the applicable limit of liability, costs taxed against the insured and interest on the judgment. The district court, however, so far as the record reflects, gave no consideration whatever to the policy provisions in assessing costs and interest against the Department. Because section 24–10–114(1) limits the maximum amount that Wayne Lee could recover against the Department to $150,000 inclusive of costs and interest in the absence of insurance coverage in excess of that limit, it was incumbent upon the district court to determine whether and to what extent the Department's insurance policy authorized an award of costs and interest in excess of the $150,000 limitation. We accordingly reverse that part of the judgment awarding costs and interest to Wayne Lee on the $150,000 judgment, and we remand the case to the district court for the purpose of determining the applicability and scope of the insurance policy provisions with respect to costs and interest and to enter an appropriate order on such matters.[6]

### V.

 Carol Lee argues that her claim for loss of consortium is entirely independent from her husband's personal injury claim and that, for this reason, the jury's

---

**6.** Because the judgment entered on behalf of Carol Lee was for $51,000 on her claim for loss of consortium, it was entirely proper for the trial court to add costs and interest to that judgment, since the total judgment in favor of Carol Lee, inclusive of costs and interest, did not exceed the statutory maximum of $150,000. Nor did the total judgments entered in favor of Wayne and Carol Lee, inclusive of costs and interest, exceed the statutory maximum of $400,000.

award of $100,000 should not have been reduced by the percentage of comparative negligence attributable to her husband. The Department and Plog, in contrast, contend that Carol Lee's claim for loss of consortium is subsumed within her husband's claim and, as such, fails to qualify as an injury to an additional person within the meaning of section 24–10–114(1). We conclude that a claim for loss of consortium, while derivative for purposes of attributing the injured spouse's negligence to the other spouse's consortium claim, is nonetheless a separate injury within the meaning of section 24–10–114(1) of the Governmental Immunity Act and thus gives rise to a separate right of recovery.

### A.

As noted previously, section 24–10–114(1) allows recovery up to the statutory maximum of $150,000 "[f]or any injury to one person in a single occurrence" or up to the statutory maximum of $400,000 "[f]or an injury to two or more persons in any single occurrence" subject to the qualification that no single person may recover an amount in excess of $150,000. Section 24–10–103(2), 10 C.R.S. (1982), defines "injury" to include "death, injury to a person, [and] damages to or loss of property, of whatsoever kind, which would be actionable in tort if inflicted by a private person." Long ago this court recognized that "a person ... who has lost the society, companionship and services of his wife and has expended money in an attempt to minimize or prevent such loss, has himself sustained a personal injury." *American Insurance Company v. Naylor,* 103 Colo. 461, 470, 87 P.2d 260, 265 (1939). In 1961 the legislature extended to married women "the same right to recover for loss of consortium of her husband as is afforded husbands in like actions." § 14–2–209, 6 C.R.S. (1973); *see* Ch. 180, sec. 1, § 90–2–11, 1961 Colo.Sess. Laws 560.

We find nothing in the Governmental Immunity Act to indicate that the legislature intended to exclude from the definition of "injury" a claim for loss of consortium. On the contrary, the plain terms of section 24–10–103(2) clearly express an intent to include within the meaning of "injury" any type of injury that would be actionable in tort if inflicted by a private person. A claim for loss of consortium is such an injury. We therefore hold that loss of consortium constitutes an injury within the Governmental Immunity Act that gives rise to a separate right of recovery on behalf of the spouse suing for loss of consortium.

### B.

The issue of whether, for purposes of comparative negligence, a claim for loss of consortium is derivative in relation to the claim of the spouse seeking damages for personal injuries, or is an entirely independent claim, has not previously been decided by this court. Because a claim for loss of consortium was considered collateral or derivative to the personal injury claim of the other spouse, most courts, in the past, under a pre-comparative negligence regime, viewed the contributory negligence of the injured spouse as a complete bar to recovery by the other spouse for loss of consortium. *E.g., Chicago, Burlington & Quincy Railroad Co. v. Honey,* 63 Fed. 39 (8th Cir.1894); *Elmore v. Illinois Terminal Railroad Co.,* 301 S.W.2d 44 (Mo.App. 1957); *Thibeault v. Poole,* 238 Mass. 480, 186 N.E. 632 (1933); *Peters v. Bodin,* 242 Minn. 489, 65 N.W.2d 917 (1954); *Friedman v. Beck,* 250 A.D. 87, 293 N.Y.S. 649, *appeal dismissed,* 274 N.Y. 566, 10 N.E.2d 554 (1937); *Jordan v. City of Pittsburgh,* 332 Pa. 230, 3 A.2d 677 (1938); *Ross v. Cuthbert,* 239 Or. 429, 397 P.2d 529 (1964); *Cawley v. LaCrosse City Railroad Co.,* 106 Wis. 239, 82 N.W. 197 (1900). *See generally* W. Prosser & W. Keeton, *The Law of Torts* § 125, p. 937 (5th ed.1984). This also has been the position of the American Law Institute in the Restatement (Second) of Torts.[7] We adopted this rule in

7. Section 494 of the Restatement (Second) of Torts (1965) states:

The plaintiff is barred from recovery for an invasion of his legally protected interest in the

*Pioneer Construction Co. v. Bergeron,* 170 Colo. 474, 462 P.2d 589 (1969), where we noted that the rule itself had been criticized by text writers and commentators [8] but nonetheless represented the overwhelming weight of authority in this country.

With the advent of comparative negligence, the negligence of the injured spouse is no longer a complete defense to a tort claim. Most of the "comparative negligence" jurisdictions have continued to treat a claim for loss of consortium as derivative, with the result that the comparative negligence of the injured spouse serves either to reduce or to bar recovery on the consortium claim. *E.g., Ferguson v. Ben M. Hogan Co.,* 307 F.Supp. 658 (W.D.Ark.1969) (applying Arkansas law); *Eggert v. Working,* 599 P.2d 1389 (Alaska 1979); *Nelson v. Busby,* 246 Ark. 247, 437 S.W.2d 799 (1969); *Hamm v. City of Milton,* 358 So.2d 121 (Fla.Dist.Ct.App.1978); *Thill v. Modern Erecting Co.,* 284 Minn. 508, 170 N.W.2d 865 (1969); *Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y.S.2d 711 (1981); *White v. Lunder,* 66 Wis.2d 563, 225 N.W.2d 442 (1975). In a "pure comparative negligence" jurisdiction, for example, the comparative negligence of the spouse suing for personal injuries is attributed to the loss of consortium claim so as to reduce any damages on that claim by the percentage of negligence attributable to the other spouse. *Maidman,* 82 A.D.2d 299, 411 N.Y.S.2d 711. In a "modified comparative negligence" jurisdiction, any damages awarded on a loss of consortium claim are also reduced by the percentage of negligence attributable to the spouse who suffered the personal injuries; however, when that spouse's contributory negligence exceeds a certain statutory percentage—that is, depending on the jurisdiction, the injured spouse's negligence is either equal to or greater than the percentage of negligence attributable to the defendant—the claim of the other spouse for loss of consortium is totally barred. *E.g., White,* 66 Wis.2d 563, 225 N.W.2d 442; *see also Nelson,* 246 Ark. 247, 437 S.W.2d 799; *Runcorn v. Shearer Lumber Products, Inc.,* 107 Idaho 389, 690 P.2d 324 (1984). Criticism of the derivative approach has led some courts to treat a claim for loss of consortium as a separate and distinct injury which gives rise to a cause of action that is neither dependent upon the negligence of the injured spouse nor subject to the defenses that would defeat or modify the personal injury claim of the other spouse. *E.g., Macon v. Seaward Construction Co., Inc.,* 555 F.2d 1 (1st Cir.1977); *Lantis v. Condon,* 95 Cal.App.3d 152, 157 Cal.Rptr. 22 (1979); *Stapleton v. Palmore,* 162 Ga.App. 525, 291 S.E.2d 445

health or life of a third person which results from the harm or death of such third person, if the negligence of such third person would have barred his own recovery.

**8.** Much of the criticism directed to the majority rule arose prior to the adoption of comparative negligence, when contributory negligence constituted a total bar to recovery. That criticism generally centered on the notion that, since the injury was suffered by the consortium spouse alone and was different in kind and severity from the personal injury to the other spouse, it was illogical to treat loss of consortium as a derivative rather than an independent claim. *See, e.g.,* W. Prosser, *Handbook of the Law of Torts* § 125, pp. 892–3 (4th ed. 1971); 1 F. Harper & F. James, *The Law of Torts* § 23.8 (1956). Professors Harper and James also questioned one of the rationales given for the majority approach, that of fairness to the defendant:

The current rule here seems to spring from a notion that it is unfair to the defendant to deprive him of the defense of contributory negligence under circumstances where he would reasonably expect to have it. But analysis will reveal this as a strange [n]otion. Under the fault principle a wrongdoer is not relieved of liability by contributory negligence because of any merit in his own position, but because of an infirmity in plaintiff's. So far as defendant's deserts go, this amnesty is a windfall, and his expectations of such a thing are entitled to no consideration. Ordinarily they get no consideration.

1 F. Harper & F. James, *The Law of Torts* § 23.8, p. 1279 (1956).

We note, however, that the most recent edition of Dean Prosser's work has eliminated much of the author's earlier criticism and now acknowledges that the choice between the derivative and the independent approaches may be more properly characterized as one of policy rather than pure logic. W. Prosser & W. Keeton, *The Law of Torts* § 125, pp. 938–39 (5th ed. 1984).

(1982); *Feltch v. General Rental Co.*, 383 Mass. 603, 421 N.E.2d 67 (1981).[9]

▮▮▮ We believe that the better rule is to treat a consortium claim as derivative for purposes of comparative negligence. Several reasons lead us to this conclusion. First, this court has viewed a claim for loss of consortium as derivative in nature ever since 1969 when it issued its opinion in *Pioneer Construction*, 170 Colo. 474, 462 P.2d 589. That case was decided under a system of tort law that recognized the contributory negligence of an injured claimant as a complete defense to a tort claim in negligence. With the adoption of comparative negligence in 1971, the harsh effect of the contributory negligence of an injured spouse no longer bars recovery on either the personal injury or consortium claim so long as such negligence is less than the negligence of the person against whom recovery is sought. § 13–21–111(1), 6 C.R.S. (1973). There is little reason under these circumstances to reject the precedential value of our prior decision in *Bergeron*.

Second, we believe that the derivative approach is the simplest and most efficient way to reach a just result. While it is true that "each spouse is equal and independent and suffers a personal loss when the other is injured," *Eggert*, 599 P.2d at 1391, the fact remains that the basis for recovery on a consortium claim is interference with the continuance of a healthy and happy marital relationship. The loss to that relationship resulting from an accident "is best distributed among those whose negligence caused it in proportion to the fault of each of them." *Eggert*, 599 P.2d at 1391.

Finally, whether or not the parties to a marriage are viewed as a single social and economic unit, the fact remains that the marital relationship gives rise to a compendium of mutual interests which arise from and are unique to that relationship. The law has always sought, whenever practicable, to recognize this unity of interest between husband and wife and to preserve marital harmony. If a claim for loss of consortium were viewed as totally independent of the other spouse's personal injury claim, there would be no reason to preclude one spouse from suing another for loss of consortium or to prohibit the primary tortfeasor sued in a consortium claim from impleading the spouse who suffered the personal injuries. *See Stapleton*, 162 Ga.App. 525, 291 S.E.2d 445; *Lantis*, 95 Cal.App.3d 152, 157 Cal.Rptr. 22. Placing one spouse in an adversarial relationship to the other over the latter's claim for loss of consortium introduces an element of legal conflict into the marriage that, far from contributing to marital harmony, will most likely have the effect of fostering discord between the parties. The derivative approach avoids much of this potential for conflict, since the recovery on a consortium claim is dependent solely on the determination of the relative degrees of negligence of the defendant and the spouse who sued for the personal injuries.

While we acknowledge that neither the derivative nor the independent approach is able to resolve all the conceptual problems that a claim for loss of consortium holds out for other areas of the law,[10] we believe

---

**9.** Some courts adopting an independent approach have held that, even if the spouse suffering personal injury was unsuccessful on the merits or gave a release to the tortfeasor on the personal injury claim, the other spouse would still have the right to bring an action for loss of consortium. *Stapleton v. Palmore,* 162 Ga.App. 525, 291 S.E.2d 445 (1982); *Brown v. Metzger,* 118 Ill.App.3d 855, 74 Ill.Dec. 405, 455 N.E.2d 834 (1983); *Rosander v. Copco Steel & Engineering Co.,* 429 N.E.2d 990 (Ind.App.1982); *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978). We note that the Texas Supreme Court and the Illinois and Indiana courts of appeal have characterized loss of consortium as "derivative" in

the very limited sense that the consortium injury is necessarily dependent upon a physical injury to a spouse. None of these courts, however, places any legal significance on the label and, in all other respects, their approach clearly falls into the independent camp.

**10.** If we were to recognize a claim for loss of consortium as an independent cause of action for purposes of comparative negligence, logic would seem to dictate that a spouse should have the right to sue the injured spouse's employer for consortium damages arising out of a work-related injury, notwithstanding the fact that the claim of the injured spouse was subject to work-

that in the area of comparative negligence the derivative approach is not only more consistent with our prior jurisprudence but also provides the better vehicle for accommodating the various interests affected by the claim itself. For purposes of comparative negligence, therefore, we decline to treat a claim for loss of consortium as completely independent of a claim for personal injuries filed by the other spouse. We accordingly hold that any negligence on the part of Wayne Lee must be attributed to Carol Lee's claim for loss of consortium.

### C.

■ We now apply this derivative approach to Carol Lee's claim for loss of consortium. Under Colorado's comparative negligence statute, § 13–21–111(1), 6 C.R.S. (1973), the contributory negligence of Wayne Lee is not a bar to recovery on his claim when, as here, such negligence is not as great as the negligence of the Department and Plog; however, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury ... recovery is made." § 13–21–111(1), 6 C.R.S. (1973). When Wayne Lee's 49% negligence is attributed to Carol Lee's claim for loss of consortium, Carol Lee can recover only 51% of her total damages of $100,000, or $51,-000, plus the costs and interest awarded in connection with her consortium claim. The trial court, therefore, properly reduced the jury's award of $100,000 in favor of Carol Lee to $51,000.

### VI.

Carol Lee, as next friend of her children, argues that the trial court erred in setting aside the jury verdicts in favor of the Lee children for the loss of parental companionship and support caused by the injuries to their father. We disagree and accordingly uphold the action of the trial court.

■ We recognize that an injury to a parent may have a deleterious effect on that parent's ability to provide companionship, support, and other benefits to his or her children. This type of loss, however, presents problems that are difficult to accommodate within the conceptual framework of tort law. The question of whether a child should be permitted to recover monetary damages for the loss of parental companionship and support stemming from a negligently inflicted injury to a parent involves a consideration of such factors as the efficacy of monetary compensation as a substitute for the companionship and guidance of a parent, the intangible character of the loss, the difficulty of measuring damages to offset the loss, the individual and societal costs necessarily resulting from recognition of this new tort, and the risk of overlapping and multiple awards for the different interests of children and spouse adversely affected by the parent's

men's compensation legislation. The goals of the Workmen's Compensation Act are to provide compensation for job-related injuries without regard to fault and to immunize the employer from common law tort claims arising out of such injuries. *E.g., Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973). These legislative goals could be seriously undermined if a claim for loss of consortium were to be viewed as non-derivative and totally independent of the personal injury claim of the other spouse. Additionally, recognition of loss of consortium as an independent claim gives rise to equally serious problems relative to the statute of limitations. An action in negligence for personal injuries must be commenced within six years after the cause of action accrues. § 13–80–110(1)(g), 6 C.R.S. (1973). Since it is conceivable that a loss of consortium claim may not show up for some time after the incident causing the personal injuries to the other spouse, the resolution of the personal injury action would not necessarily preclude, under the independent approach, the filing by the other spouse of a loss of consortium claim at some point beyond the six-year period applicable to the personal injury claim. To allow such a belated action could arguably undermine the purpose of the statute of limitations, which is to avoid unnecessary delay in the prosection and resolution of claims. *E.g., Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979). While this case does not involve either the Workmen's Compensation Act or the statute of limitations, we cite these examples not for the purpose of resolving these issues here but simply to point up some of the conceptual problems inhering in the independent approach.

injury. The legislature, in our view, is in the best position to weigh these factors and to make the appropriate decision regarding the cognizability of a child's claim for the loss of companionship and support of an injured parent. We agree in this respect with the reasoning of *Hoffman v. Dautel,* 189 Kan. 165, 168, 368 P.2d 57, 59–60 (1962), where the Kansas Supreme Court stated:

> While courts should be ever alert to widen the circle of justice, at the same time they should proceed with caution in laying down a new rule in the light of conditions affected or to be affected by it. If this court were to conclude that a cause of action is here alleged, the far-reaching results of such a decision would be readily apparent. A new field of litigation would thus arise between minor children and third party tort-feasors who injure either parent when it is alleged that the negligent injury contributed to the impairment or destruction of the happy family unit with resulting loss and damage to the minor children. The possibility of multiplicity of actions based upon a single tort and one physical injury, when there is added the double-recovery aspect of such a situation in the absence of some statutory control, is deemed sufficient to prevent this court from answering in the affirmative that a cause of action has been alleged.

*See also Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977); *Russell v. Salem Transportation Co.,* 61 N.J. 502, 295 A.2d 862 (1972). The trial court, therefore, properly set aside the jury verdicts entered on behalf of the Lee children for the loss of companionship and support resulting from the injury to their father.[11]

## VII.

In summary, we hold as follows: that the Department and Plog did not waive their right to limit the judgment entered in favor of Wayne Lee to the statutory limitations of the Governmental Immunity Act by virtue of their failure to answer the amended complaint and to present evidence and tender jury instructions on those limitations; that the Governmental Immunity Act limits the judgment which can be entered against a public entity and its employee to $150,000 for any injury to one person in a single occurrence and $400,000 for injuries to two or more persons in a single occurrence; that the public entity rather than the public employee is responsible for satisfying the judgment; that because these statutory limitations do not violate equal protection of the laws, the trial court properly reduced the judgment in favor of Wayne Lee to $150,000; that the statutory recovery limitation of $150,-000 for an injury to any one person in a single occurrence is inclusive of costs and interest and that, therefore, the trial court can award costs and interest on the $150,000 judgment entered in favor of Wayne Lee only if the Department's insurance policy provides coverage for costs and interest in addition to the $150,000 limitation; that a claim for loss of consortium is a separate injury giving rise to a separate right of recovery under the Governmental Immunity Act, but that such a claim is derivative for purposes of attributing the negligence of the spouse suing for personal injuries to the consortium claim of the other spouse, and that the trial court correctly reduced the jury award in favor of Carol Lee by the percentage of negligence attributable to Wayne Lee; and that, because a child's claim for loss of parental companionship and support is not cognizable in the state of Colorado, the trial court properly set aside the verdicts entered in favor of the Lee children.

The judgment is accordingly affirmed in part, reversed in part and the case is remanded to the district court for further

---

11. We know of three jurisdictions that recognize a child's nonstatutory claim for loss of parental companionship and support: Massachusetts, *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980); Michigan, *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); and Iowa, *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981). We believe, however, that the better approach is to leave this matter to the legislature.

proceedings relating to costs and interest in accordance with the views herein expressed.